**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| ANTHONY J. MOTTAS,<br>　　　　　Appellant, | DOCKET NUMBER<br>DE-1221-19-0011-W-1 |
| 　　　　v. | |
| DEPARTMENT OF VETERANS<br>　　AFFAIRS,<br>　　　　　Agency. | DATE:  June 13, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Anthony J. Mottas, Crestview, Florida, pro se.

Zane Perry Schmeeckle, Kansas City, Missouri, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

## FINAL ORDER

¶1　　　　The appellant has filed a petition for review of the initial decision, which denied his request for corrective action.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2    The appellant was previously employed as an Advanced Medical Support Assistant (MSA) at the agency's Junction City, Kansas outpatient clinic. Initial Appeal File (IAF), Tab 15 at 314. On or about June 6, 2017, the appellant contacted the agency's Office of Compliance and Business Integrity (OCBI) regarding "access to care" issues related to the implementation of a block scheduling program, whereby a physician's appointment slots are blocked off from being filled for a period of time following the physician's return from any period of leave lasting longer than a week. *See* IAF, Tab 15 at 54-55, 107, 158, 162-63.

¶3    On August 22, 2017, the agency's Medical Center Director directed that an Administrative Investigative Board (AIB) be convened to investigate allegations that the appellant used agency time to conduct business as a Veterans Service Organization (VSO) representative, represented the agency in an unfavorable manner to veterans and the public, provided direction to individuals outside of his scope of duties, failed to follow guidance on scheduling procedures, and behaved

in a manner that intimidated agency staff. IAF, Tab 15 at 139-40. By a letter dated May 24, 2018, the Medical Center Director—the AIB convening authority —certified the completion of the AIB investigative report and findings, and directed that a number of actions be taken against the appellant, including discipline "up to removal, if appropriate, based on progressive discipline," and reassignment out of the Junction City facility. *Id*. at 5-7. By a letter dated June 18, 2018, the Service Line Manager for the Business Office proposed the appellant's suspension for 14 days for one charge with two specifications of inappropriate conduct based on the information obtained from the AIB investigation and the convening authority's recommendation. IAF, Tab 1 at 8-10.

¶4    On July 13, 2018, the appellant filed a complaint with the Office of Special Counsel (OSC), asserting that the agency initiated the AIB investigation of him, detailed him to the Topeka, Kansas office, and proposed his suspension for 14 days in retaliation for his protected disclosures to the OCBI. *Id*. at 13-19. On July 17, 2018, after the appellant responded to the proposal, the deciding official imposed the suspension. *Id*. at 7, 11-12. One month later, the agency permanently reassigned the appellant to the Topeka, Kansas Medical Center, effective August 19, 2018. *See* IAF, Tab 12 at 31, 36. By a letter dated August 27, 2018, OSC closed its inquiry into the appellant's complaint and provided him with Board appeal rights.[2] *Id*. at 20-21.

---

[2] In the appellant's July 13, 2018 OSC complaint, he identified the agency's "proposal" to suspend him for 14 days as one of the challenged personnel actions. IAF, Tab 1 at 17. The appellant served the 14-day suspension from July 23, 2018 through August 5, 2018. IAF, Tab 12 at 32. OSC's close-out letter notes that it issued its preliminary determination to close the appellant's file on August 13, 2018, and the appellant provided "additional information" on August 16, 2018, which OSC reviewed. IAF, Tab 1 at 20. The appellant has not provided copies of this correspondence with OSC. Therefore, on the provided record, it is not clear whether the appellant amended his OSC complaint to include the 14-day suspension itself as a challenged personnel action. However, the administrative judge concluded that the appellant had exhausted this claim with OSC. *See* IAF, Tab 18 at 5, Tab 35, Initial Decision at 3-4. We conclude that there is sufficient evidence in the record demonstrating that the appellant exhausted with OSC his claim that the agency retaliated against him by suspending him for 14 days. *See Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10

¶5      On September 25, 2018, the appellant timely filed the instant Individual Right of Action (IRA) appeal. *Id*. at 1-5. After considering the parties' jurisdictional filings, the administrative judge issued an order finding that the appellant exhausted his administrative remedies with OSC regarding his claim that he made a protected disclosure under 5 U.S.C. § 2302(b)(8), or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C), when he complained to the OCBI regarding "access to care issues," and that in retaliation for his disclosure or activity, he was suspended for 14 days and permanently reassigned. IAF, Tab 18 at 3-6. After holding the appellant's requested hearing, IAF, Tabs 32, 34, the administrative judge issued an initial decision, denying the appellant's request for corrective action, IAF, Tab 35, Initial Decision (ID) at 1, 21. In the initial decision, the administrative judge reiterated his findings regarding exhaustion, concluded that the appellant had established Board jurisdiction over his appeal, and determined that the appellant met his burden of establishing that he engaged in protected whistleblowing activity and that his protected activity was a contributing factor in the agency's decision to take both of the contested personnel actions. ID at 4-7. Nevertheless, the administrative judge concluded that the agency met its burden of proving by clear and convincing evidence that it would have taken the challenged actions absent the appellant's protected whistleblowing activity, and consequently denied the appellant's request for corrective action. ID at 8-21.

¶6      The appellant has timely filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. The agency has filed a response in opposition to the petition for review, and the appellant has filed a reply. PFR File, Tabs 3, 5.

---

(explaining that to show exhaustion, an appellant need only show that he provided OSC with a sufficient basis to pursue an investigation that might lead to corrective action).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7    On review, the appellant argues that the administrative judge erred by allowing an agency witness to testify at the hearing over his objection and by crediting that witness's testimony over his own. PFR File, Tab 1 at 3. The appellant also challenges the administrative judge's determination that the agency met its burden of proving that it would have taken the challenged personnel actions in the absence of the appellant's protected activity, arguing that the administrative judge erred in his analysis of the second and third factors identified by the U.S. Court of Appeals for the Federal Circuit in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), by incorrectly concluding that the Director and Associate Director had only a slight motive to retaliate against the appellant and by improperly concluding that the three Registered Nurse comparator employees were similarly situated to the appellant, an MSA. PFR File, Tab 1 at 4-5, Tab 5 at 4. Additionally, the appellant argues that the agency erroneously failed to consider the factors identified in the Board's decision in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) when determining the penalty to impose against him. PFR File, Tab 1 at 4-5, Tab 5 at 3-4. Finally, the appellant argues that the administrative judge erred by granting the agency's request for an extension of time to submit a pleading, denying the appellant's requests to delay the prehearing conference and the hearing, denying the appellant's request that the administrative judge recuse himself, and denying the appellant's request that the administrative judge certify for interlocutory appeal his ruling denying the appellant's request for recusal. PFR File, Tab 1 at 4, Tab 5 at 3-4; *see* IAF, Tabs 17, 18, 20-23, 25.

The administrative judge correctly concluded that the appellant engaged in protected activity when he contacted the OCBI hotline and that his protected activity was a contributing factor in the agency's decision to take both of the challenged personnel actions.

¶8    In order to prevail on the merits of an IRA appeal, an appellant must prove by preponderant evidence that he made a whistleblowing disclosure as described

under 5 U.S.C. § 2302(b)(8) or engaged in protected activity as described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action outlined in 5 U.S.C. § 2302(a). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see* 5 U.S.C. § 1221(e)(1). If an appellant meets his burden, then the Board shall order corrective action unless the agency shows by clear and convincing evidence that it would have taken the same personnel action in the absence of the whistleblowing disclosure and/or protected activity. *Salerno*, 123 M.S.P.R. 230, ¶ 5; *see* 5 U.S.C § 1221(e)(2).

¶9    As previously noted, the administrative judge concluded that the appellant met his burden of proving that he engaged in protected whistleblowing activity under 5 U.S.C. § 2302(b)(9)(C) when he contacted the OCBI hotline to complain about "access to care" issues related to the agency's block scheduling policy. *See* ID at 6. In making this determination, the administrative judge noted that on December 12, 2017, the National Defense Authorization Act for Fiscal Year 2018 (NDAA), Pub. L. No. 115-91, 131 Stat. 1283, was signed into law, which amended various provisions of Title 5 of the U.S. Code, including section 2302(b)(9)(C) to provide that, in addition to the Inspector General of an agency or the Special Counsel, a disclosure to "any other component responsible for internal investigation or review" also constitutes protected activity, and the administrative judge found that the appellant's disclosure to the OCBI hotline fell within the coverage of the post-NDAA amendment to section 2302(b)(9)(C). ID at 5-6.

¶10    In the recent Board decision *Edwards v. Department of Labor*, 2022 MSPB 8, ¶¶ 28-32, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023), the Board determined that the NDAA amendment expanding the coverage of 5 U.S.C. § 2302(b)(9)(C) does not retroactively apply when all of the events relevant to the appeal occurred prior to the enactment of the NDAA. Although the appellant contacted the OCBI hotline on or around June 6, 2017, prior to the NDAA's

amendment to section 2302(b)(9)(C), the purported retaliatory personnel actions —the appellant's 14-day suspension and permanent reassignment—occurred in July and August 2018, respectively, after the enactment of the NDAA. *See* IAF, Tab 1 at 7, Tab 12 at 31, Tab 15 at 54-55. Because the purportedly retaliatory personnel actions occurred after the NDAA's enactment, we conclude that the administrative judge correctly applied the post-NDAA language in 5 U.S.C. § 2302(b)(9)(C) to this appeal. *See McCray v. Department of the Army*, 2023 MSPB 10, ¶ 26 (applying the post-NDAA version of 5 U.S.C. § 2302(b)(9)(C) when all relevant events occurred after the NDAA went into effect).

¶11    We also agree with the administrative judge's determination that the appellant met his burden of proving that he engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C), as amended by the NDAA, when he contacted the OCBI hotline regarding "access to care" issues related to the block scheduling policy. *See* ID at 6. As the administrative judge noted, the evidence provided by the parties reflects that the appellant contacted relevant authorities at the OCBI, and they acknowledged the appellant's complaint and "actively conduct[ed] [an] investigation" into the complaint, which resulted in the cancelation of the block scheduling policy. IAF, Tab 15 at 54-55, Tab 26 at 7-9, Tab 34, Hearing Compact Disc 2 (HCD 2) (testimony of the agency Chief of Staff); *see* ID at 18. Further, under 5 U.S.C. § 2302(b)(9)(C), cooperating with or disclosing information to the OIG or any other component responsible for internal investigation or review is considered protected activity without regard for the content of the disclosure, as long as such disclosure is made "in accordance with applicable provisions of law." *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8 (finding that disclosures of information to an agency's OIG are protected regardless of their content, as long as such disclosures are made "in accordance with applicable provisions of law"). On review, the agency has not challenged the administrative judge's finding that the appellant's disclosure to the OCBI

constituted protected activity under 5 U.S.C. § 2302(b)(9)(C), as amended by the NDAA. Accordingly, we agree with the administrative judge's conclusion that the appellant met his burden of proving that he engaged in a protected activity when he contacted the OCBI, a "component responsible for internal investigation or review." *See* ID at 5-6.

¶12 Additionally, we agree with the administrative judge's conclusion that the appellant met his burden of demonstrating that his protected activity was a contributing factor in the agency's decision to take both of the contested personnel actions. *See* ID at 6-7. To prevail in an IRA appeal before the Board, an appellant also must prove by preponderant evidence that his disclosure was a contributing factor in a personnel action. *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 21 (2016). One way of proving the contributing factor element is the "knowledge/timing test," under which an appellant can prove that his disclosure was a contributing factor in a personnel action through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*

¶13 As the administrative judge noted, the record reflects that the AIB convening authority knew about the appellant's protected activity on or about June 6, 2017, before deciding to convene the AIB less than 3 months later, and that same official played a role in both of the challenged personnel actions by directing other agency officials to initiate disciplinary action based on the AIB's findings, resulting in the appellant's suspension and permanent reassignment in July and August 2018. IAF, Tab 15 at 53; HCD 2 (testimony of the Medical Center Director/AIB convening authority); *see* ID at 6-7. Consequently, the administrative judge concluded that the appellant met his burden of proving contributing factor based on the knowledge/timing test. ID at 7; *see Scoggins*, 123 M.S.P.R. 592, ¶ 25 (finding that that a personnel action taken within 2 years

of the appellant's disclosures satisfies the knowledge/timing test). The agency has not challenged this finding on review, and we see no reason to disturb it.

**We agree with the administrative judge's conclusion that the agency met its burden of proving by clear and convincing evidence that it would have taken the challenged personnel actions in the absence of the appellant's protected activity.**

*Carr Factor* 1

¶14    Once the appellant meets his burden to establish a prima facie case of reprisal for whistleblowing, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel actions in the absence of the appellant's whistleblowing. *Scoggins*, 123 M.S.P.R. 592, ¶ 26. In determining that the agency met its burden of proving that it would have taken the challenged actions in the absence of the appellant's whistleblowing, the administrative judge extensively considered the factors identified by the Federal Circuit in *Carr*, 185 F.3d at 1323, including: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. ID at 8-21.

¶15    The administrative judge concluded that the first *Carr* factor weighed strongly in the agency's favor, based on the fact that the agency's asserted reasons for taking the personnel actions were sound, the agency had compelling evidence that the appellant engaged in the acts of wrongdoing alleged, and the agency witnesses involved in taking the personnel actions against the appellant testified credibly and convincingly that the appellant engaged in the alleged misconduct and it negatively impacted the agency work environment, while the appellant's testimony to the contrary was incredible and evasive. ID at 8-18.

¶16    On review, the appellant does not directly challenge the administrative judge's findings with respect to the first *Carr* factor. However, he does allege that the agency erred by taking the challenged personnel actions against him

without considering the factors identified by the Board in *Douglas*, 5 M.S.P.R. at 305-06, which articulated a nonexhaustive list of factors relevant to the penalty determination in adverse action appeals. PFR File, Tab 1 at 4-5; Tab 5 at 3. This is akin to an argument challenging the merits of the agency's decision to take the contested personnel actions, which the Board does not have jurisdiction to consider in the context of an IRA appeal. *See Ramos v. Department of the Treasury*, 72 M.S.P.R. 235, 240 (1996) (stating that the Board lacks the authority in an IRA appeal to adjudicate the merits of an underlying personnel action and is limited to adjudicating the whistleblower allegations); *Geyer v. Department of Justice*, 70 M.S.P.R. 682, 687 (1996) (same), *aff'd*, 116 F.3d 1497 (Fed. Cir. 1997) (Table).

¶17 Nevertheless, even if we were to consider the appellant's argument that the agency erred by failing to conduct a proper *Douglas* factor analysis in taking the challenged actions, it would not affect our decision here. The appellant's more than 9 years of Federal service could be considered as a mitigating factor. *Douglas*, 5 M.S.P.R. at 305. Conversely, the deciding official made clear that the nature and seriousness of the offenses, which included inappropriate behavior of an intimidating and hostile nature and conducing VSO business on agency time, were significant and "quite troubling." IAF, Tab 1 at 11-12; *see Douglas*, 5 M.S.P.R. at 305 (identifying as considerations "the nature and seriousness of the offense and its relation to an employee's duties," and "the effect of the offense upon the employee's ability to perform at a satisfactory level and upon supervisors' confidence in the employee's ability to perform assigned duties"); IAF, Tab 1 at 8-12.

¶18 Additionally, although the record does not address whether the appellant has a record of prior discipline or whether the penalty was consistent with the agency's table of penalties, the deciding official specifically noted that she considered the reasonableness of the 14-day suspension penalty and determined it to be "within the range of reasonableness," and as discussed in greater detail in

the third *Carr* factor discussion, the agency Medical Center Director who recommended the penalty testified at the hearing that he had both suspended and reassigned other similarly situated agency employees for "inappropriate conduct" that "contributed to a hostile work environment" in a manner similar to that of the appellant. IAF, Tab 1 at 11; HCD (testimony of the Medical Center Director); *see Douglas*, 5 M.S.P.R. at 305 (identifying as a consideration the consistency of the penalty with those imposed upon other employees for the same or similar offenses); IAF, Tab 27 at 13-18. Based on our independent review of the *Douglas* factors, we conclude that the agency's actions were reasonable and supported by the record. Accordingly, we find no reason to disturb the administrative judge's findings concerning the first *Carr* factor.

*Carr Factor 2*

¶19 Regarding the second *Carr* factor, the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision, the appellant argues on review that the administrative judge assigned insufficient weight to the fact that the Medical Center Director and Associate Director had prior knowledge of his whistleblowing activity. PFR File, Tab 1 at 4. The administrative judge concluded that this factor weighed modestly in the appellant's favor. ID at 18-20. The administrative judge determined that the individual with the greatest motive to retaliate against the appellant because of his protected activity (the OCBI Chief of Staff) was implicated by the disclosure, insofar as she was responsible for implementing the "block scheduling" policy that was the subject of the disclosure. ID at 18-19. Nevertheless, the administrative judge concluded that any motive she had to retaliate was slight because she was minimally affected by the decision to abandon the block scheduling program, was not disciplined for her attempt to implement it, and viewed the issues with the program as nothing more than a "process" problem. ID at 18; *see* HCD 2 (testimony of the agency Chief of Staff).

¶20    Continuing, the administrative judge concluded that the individual with the second greatest motive to retaliate (the Medical Center Director/AIB convening authority) was aware of the appellant's complaint, convened the AIB, and recommended the disciplinary actions that are the subject of this IRA appeal, but the administrative judge nevertheless concluded that the Medical Center Director's motive to retaliate was also very weak because he was not the target of the appellant's complaint and he convincingly testified that the complaint did not cause him any sort of problem.[3]  ID at 19-20; *see* HCD (testimony of the Medical Center Director).  Additionally, we note that the record does not suggest that the content of the appellant's disclosures, which concerned "access to care" issues that arose from the agency's use of block scheduling, reflected poorly on the AIB convening official in his capacity as a manager, given that he was not directly responsible for implementing the program and that the implementation of the program was described as nothing more than a "process" problem by another witness.  HCD 2 (testimony of the agency Chief of Staff); *cf. Whitmore v. Department of Labor*, 680 F.3d 1353, 1370-71 (Fed. Cir. 2012) (finding that the administrative judge took "an unduly dismissive and restrictive view" in finding no evidence of a retaliatory motive when the appellant's disclosures "repeatedly cast [the agency] and, by implication, all of the responsible [agency] officials, in a highly critical light by calling into question the propriety and honesty of their

---

[3] In his discussion of the second *Carr* factor, the administrative judge noted that the two individuals who actually proposed and sustained the two challenged personnel actions—one of whom was the Associate Director—had "no motive to retaliate against the appellant."  ID at 20; *see* IAF, Tab 1 at 11-12, Tab 12 at 36, Tab 14 at 10-12.  Although the administrative judge did not elaborate on this point in the second *Carr* factor discussion, he appears to have reached this conclusion based on the fact that neither official was the subject of the appellant's disclosure, neither had any involvement in the AIB investigation, and each testified convincingly explaining why they proposed and sustained the personnel actions.  *See* ID at 9, 17-18.  We discern no reason to doubt the administrative judge's findings in this regard.  *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (finding no reason to disturb the administrative judge's findings where she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on the issue of credibility); *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (same).

official conduct"). Accordingly, we agree with the administrative judge's conclusion that the second *Carr* factor, which concerns the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision, slightly favors the appellant. *See* ID at 20.

> *Carr Factor 3*

¶21    Finally, the administrative judge concluded that the third *Carr* factor, concerning any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated, weighed strongly in the agency's favor because the AIB convening authority testified credibly and without challenge that he had suspended and reassigned three non-whistleblower nurses in the last 6 years for the same sort of "inappropriate conduct" that "contributed to a hostile work environment" for which the appellant was suspended and reassigned. ID at 20. On review, the appellant challenges this finding, arguing that the three non-whistleblower comparator employees the agency offered were not similarly situated to the appellant because they were nurses, while the appellant is an MSA. PFR File, Tab 1 at 4-5; Tab 5 at 4.

¶22    The administrative judge considered this argument below but rejected it, concluding that the distinction was inconsequential and was outweighed by the fact that the comparator employees were charged with the same sorts of misconduct as the appellant, and the AIB convening official (the official who directed that the personnel action be taken against the appellant) had recommended the same sort of discipline for all of them. IAF, Tab 15 at 5-7, Tab 27 at 13-18; *see* ID at 20. We agree and do not read the third *Carr* factor as narrowly as the appellant would have us here. *See Whitmore*, 680 F.3d at 1373 (noting that "the requisite degree of similarity between employees cannot be construed so narrowly that the only evidence helpful to the inquiry is completely disregarded," that the requirement that comparator employees be "similarly situated" does not require "virtual identity," and that "[d]ifferences in kinds and

degrees of conduct between otherwise similarly situated persons . . . can and should be accounted for"); *see also Miller v. Department of Justice*, 842 F.3d 1252, 1262 (Fed. Cir. 2016) (rejecting an "exceedingly narrow approach" to the third *Carr* factor). Accordingly, we agree with the administrative judge's conclusion that, with respect to the third *Carr* factor, the appellant, an MSA, was similarly situated to the three nurse non-whistleblower comparator employees offered by the agency and that this factor strongly favors the agency.

¶23    In summary, we agree with the administrative judge's conclusion that any potential retaliatory motive by agency officials under the second *Carr* factor is outweighed by the strength of the agency's evidence in support of its actions and the compelling evidence that the agency takes similar action against similarly situated non-whistleblowers. Therefore, we conclude that the agency established by clear and convincing evidence that it would have taken the challenged personnel actions in the absence of the appellant's protected activity.

The appellant's remaining arguments do not provide a basis for reversal.

¶24    On review the appellant challenges the administrative judge's decisions granting the agency's request for an extension of time to submit a pleading, allowing an agency Human Resources (HR) Specialist to testify at the hearing over the appellant's objection, denying the appellant's requests to delay the prehearing conference and the hearing, denying the appellant's request that the administrative judge recuse himself, and denying the appellant's request for interlocutory certification of the denied recusal request. PFR File, Tab 1 at 3-4; Tab 5 at 3-4. An administrative judge has broad discretion to control the proceedings before him. *Scoggins*, 123 M.S.P.R. 592, ¶ 20; *see* 5 C.F.R. § 1201.41(b). The Board generally will not find reversible error in an administrative judge's case-related ruling unless it was not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case. 5 C.F.R. § 1201.115(c).

¶25     Regarding the appellant's objection to the administrative judge's decision to grant the agency's request for an extension of time to file a pleading, we find no abuse of discretion in the administrative judge's determination. PFR File, Tab 1 at 4, Tab 5 at 3; *see* IAF, Tab 8 at 4-6, Tab 9 at 1. As previously noted, the administrative judge has broad discretion to control the proceedings before him, and it was within his sound discretion to grant the agency's timely request for an extension of time to submit the filing. *Scoggins*, 123 M.S.P.R. 592, ¶ 20; *see* 5 C.F.R. § 1201.41(b)(8).

¶26     With respect to the appellant's argument that the administrative judge erred by denying his requests to delay the prehearing conference and the hearing, the appellant initially requested the delay so that he could attend a 4-week treatment program, IAF, Tab 21 at 4, but after the administrative judge issued an order seeking clarification concerning whether or not the appellant had actually enrolled in the program and received a start and end date for it, the appellant conceded that he did not yet actually have an enrollment date for the program, IAF, Tab 22 at 2; Tab 23 at 4-5. Consequently, the administrative judge denied the request at that time, but instructed the appellant to inform him immediately if a date for the program was set, and the administrative judge indicated that he would review the request at that time. Tab 25 at 1-2. The appellant did not subsequently provide any additional information. Accordingly, we find no error in the administrative judge's determination.

¶27     Regarding the administrative judge's decision granting the agency's request to allow an HR Specialist to testify at the hearing, as the agency correctly notes, the administrative judge only allowed the HR Specialist and a HR/Employee-Labor Relations (ELR) Specialist to testify at the hearing as rebuttal witnesses after the appellant alleged for the first time during his hearing testimony that he had not received the evidence supporting the agency's proposed 14-day suspension for the first time until after he had already filed his IRA appeal with the Board. ID at 10; HCD 2 (testimony of the HR Specialist, testimony of

the HR/ELR Specialist); *see* PFR File, Tab 3 at 8. In light of this potential due process concern, the administrative judge allowed the testimony over the appellant's objection, but specifically limited the testimony of both witnesses to addressing their personal knowledge concerning the appellant's receipt of the agency's evidence packet for the 14-day suspension. HCD 1 (administrative judge's ruling); HCD 2 (testimony of the HR Specialist, testimony of the HR/ELR Specialist); *see* ID at 10-11. Additionally, although the appellant argues on review that the HR/ELR Specialist's testimony was unreliable or biased based on the fact that she was present for the testimony of the other witnesses at the hearing, the administrative judge properly acknowledged this fact on the record and stated that he would consider it when determining the amount of weight to give to that witness's testimony. HCD 2 (testimony of the HR/ELR Specialist). Accordingly, we find that the administrative judge did not abuse his discretion by allowing the agency witnesses to testify over the appellant's objection.

¶28     The appellant also challenges the administrative judge's decisions denying his requests for recusal and to certify his ruling on the recusal request for interlocutory review. PFR File, Tab 1 at 4, Tab 5 at 3-4; *see* IAF, Tabs 17, 18, 20. Regarding the recusal request, the appellant appears to suggest that the administrative judge could not be impartial in the instant appeal because he made rulings with which the appellant disagreed in a previous Board appeal. PFR File, Tab 5 at 3 (referencing *Mottas v. Department of Army*, MSPB Docket No. DE-1221-16-0415-W-1). We disagree. It is well established that conclusory claims of bias which do not involve extrajudicial conduct do not overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Simpkins v. Office of Personnel Management*, 113 M.S.P.R. 411, ¶ 5 (2010). An administrative judge's conduct during the course of a Board proceeding will warrant a new adjudication only if their comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed.

Cir. 2002). The appellant's conclusory assertions here, unsupported by any objective evidence, do not meet this standard. *See Boechler v. Department of the Interior*, 109 M.S.P.R. 542, ¶ 16 (2008) (finding that an appellant's disagreement with an administrative judge's rulings in an earlier appeal are insufficient to establish bias), *aff'd*, 328 F. App'x 660 (Fed. Cir. 2009); *King v. Department of the Army*, 84 M.S.P.R. 235, ¶ 6 (1999) (stating that an administrative judge's case-related rulings, even if erroneous, are insufficient to establish bias).

¶29        Finally, regarding the denied request for interlocutory certification, the Board's regulations provide that an administrative judge will certify a ruling for interlocutory review if the ruling involves an important question of law or policy about which there is substantial ground for difference of opinion; and an immediate ruling will materially advance the completion of the proceeding, or the denial of an immediate ruling will cause undue harm to the party or the public. 5 C.F.R. § 1201.92. The administrative judge's rulings do not meet these criteria, so the administrative judge properly did not certify the appellant's request for interlocutory review. *See Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶¶ 22-23 (2010) (explaining that an administrative judge did not abuse her discretion by denying the appellant's request to certify for interlocutory appeal the administrative judge's denial of the appellant's recusal motion). For the foregoing reasons, we deny the petition for review and affirm the initial decision denying the appellant's request for corrective action.

## NOTICE OF APPEAL RIGHTS[4]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate

---

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420, 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[5]  The court of appeals must <u>receive</u> your

---

[5] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of

petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    *Gina K. Grippando*
                                  _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.